JAMAL WALKER & JOVONNE WALKER
3757 Ravenwood Ave
Baltimore, Maryland 21213

    Plaintiffs

v.

OFFICER WAYNE JENKINS
501 Gary Hill Rd
Edgefield, South Carolina 29824
Individually and as a police officer for
BALTIMORE CITY POLICE DEPT.

AND

OFFICER KEITH GLADSTONE
601 E. Fayette Street
Baltimore, Maryland 21202
Individually and as a police officer for
BALTIMORE CITY POLICE DEPT

AND

BALTIMORE POLICE DEPT.
S/O: Michael Harrison, Police Comm.
601 E. Fayette Street
Baltimore, Maryland 21202

AND

MAJOR NATHAN WARFIELD
601 E. Fayette Street
Baltimore, Maryland 21202
Individually and as a police officer for
BALTIMORE CITY POLICE DEPT.

AND

POLICE COMM. FREDERICK BEALEFELD
601 E. Fayette Street
Baltimore, Maryland 21202
Individually and Dep. Police Comm. for
BALTIMORE CITY POLICE DEPT.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

IN THE

UNITED STATES

DISTRICT COURT

FOR THE DISTRICT

OF MARYLAND

Case No.: CLR-20-572

COMPLAINT

Defendants.                              *

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

## COMPLAINT AND JURY TRIAL DEMAND

**COMES NOW** Jamal and Jovan Walker (hereinafter "Plaintiffs"), by and through their

attorneys Ivan J. Bates, Esquire, and Hannah M. Ernstberger, Esquire, and the law office of Saller,

Lord, Ernstberger & Insley, and complaining of the acts of the Defendants alleges and states as

follows:

## INTRODUCTION

In this action, Plaintiffs seeks compensatory and punitive damages as well as other relief

pursuant to 42 U.S.C. § 1983, 42 U.S.C. §1985, the Fourth, and Fourteenth Amendments to the

United States Constitution, Article 24 of the Maryland Constitution, and Maryland Law, for the

unconstitutional and unlawful conduct of the Defendants. The actions of the Defendants as

detailed herein deprived Plaintiffs of their civil rights and constitute egregious and objectively

unreasonable violation of numerous rights under the Fourth and Fourteenth Amendments to the

United States Constitution, Article 24 of the Maryland Constitution and Maryland law. Numerous

Defendants participated in Plaintiff being illegally stopped and arrested for allegedly possessing

narcotics and a firearm, evidence that was actually fabricated by Defendants in an attempt to

justify their illegal actions. The remaining Defendants were aware of the custom of violating

citizens' civil rights and condoned, or otherwise failed to adequately train and supervise, such

actions. In this instance of carrying out the custom, Plaintiffs had their civil rights violated when

they were illegally detained, searched and arrested and prosecuted for crimes that they did not

commit, but instead were fabricated by the Defendant Officers.

2

## PARTIES

1. Plaintiffs Jamal and Jovan Walker are citizens of the United States residing at 3757 Ravenwood Ave, Baltimore, Maryland 21213

2. Defendant Officer Wayne Jenkins (hereinafter "Officer Jenkins," "Defendant Jenkins," or collectively with other named officers as "Officer Defendants") was, at all times relevant hereto, employed by Defendant Baltimore City Police Department as a police officer and acting in the course and scope of his official duties as a Baltimore City Police Officer. Defendant Jenkins was on duty and participated in the illegal detention, search, and subsequent arrest of Plaintiffs. Defendant Jenkins is sued in his individual and official capacity under 42 U.S.C. § 1983; 42 U.S.C. §1985; the Fourth, and Fourteenth Amendments to the United States Constitution; Article 24 of the Maryland Constitution; and Maryland Law.

3. Defendant Officer Keith Gladstone (hereinafter "Officer Gladstone," "Defendant Gladstone," or collectively with other named officers as "Officer Defendants") was, at all times relevant hereto, employed by Defendant Baltimore City Police Department as a police officer and acting in the course and scope of his official duties as a Baltimore City Police Officer. Defendant Gladstone was on duty and participated in the illegal detention, search, and subsequent arrest of Plaintiffs. Defendant Gladstone is sued in his individual and official capacity under 42 U.S.C. § 1983; 42 U.S.C. § 1985; the Fourth and Fourteenth Amendments to the United States Constitution; Article 24 of the Maryland Constitution; and Maryland Law.

4. Defendant Baltimore City Police Department (hereinafter "BPD") is an agency of the State of Maryland. The BPD is responsible for providing police and law enforcement services for the City of Baltimore and for investigating crimes that occur within the City. The BPD has its principal offices at 242 West 29th Street, Baltimore, Maryland 21211-2908. Upon information

3

and belief, the BPD reposed decision-making authority regarding police officer training and supervision. The BPD is a local agency for the purposes of the Local Government Tort Claims Act.

5. Though it has long been noted by the courts that Defendant BPD is customarily a state agency rather than an agency of a county or municipality, and therefore enjoys the protection of sovereign immunity, this Court has determined that Defendant BPD is a suitable entity under 42 U.S.C. § 1983. *Hector v. Weglein*, 558 F. Supp. 194, 197-99 (D. Md. 1982), *see also Chin v. City of Baltimore*, 241 F. Supp. 2d 546, 547-48 (D. Md. 2003). The Court ruled Defendant BPD is "so connected with the government of Baltimore City to such an extent as to prevent the Police Department from asserting an Eleventh Amendment immunity." *Chin* at 548.

6. Regarding Plaintiffs' state claims, Defendant BPD is sued pursuant to 42 U.S. § 1983, § 1985, and § 1988, as individual Defendants were acting under color of state law and subjected Plaintiff to deprivation of his civil rights under the United States Constitution.

7. Defendant BPD conspired with the Officer Defendants to encourage, tolerate, ratify, and be deliberately indifferent to the following patterns, practices, and customs and to the need for more or different training, supervision, investigation or discipline in the areas of:

   a. The improper exercise of police powers, including but not limited to the unreasonable use of force, the excessive use of force, robbery, unlawful arrest, planting evidence, falsifying official reports, death while in custody, and violations of citizens' Constitutional rights, particularly in connection with unlawful search and seizure, and racially motivated acts by its police officers;

   b. The monitoring of officers whom it knew or should have known were suffering from emotional and/or psychological problems that impaired their ability to function as officers;

4

c. The failure to identify and take remedial or disciplinary action against police officers who were subject of prior or internal complaints of misconduct;

d. Police Officers' use of their status as police officers to employ the use of excessive force and unlawful arrest, unlawful search and seizure, or to achieve ends not reasonably related to their police duties; and

e. The failure of police officers to follow established policies, procedures, directives and instructions regarding he arrest, detention, pursuit, search and seizure, duty to rescue and prevent unnecessary bodily harm, use of force and arrest powers under such circumstances as presented herein.

8. Prior to November 3, 2010, Defendant BPD had actual or constructive knowledge that Defendants Jenkins and Gladstone, and other police officers of Defendant BPD were engaged in conduct that posed pervasive and unreasonable risk of constitutional injury to residents and citizens within the jurisdiction of the City of Baltimore but failed to take appropriate and adequate remedial action against these police officers to prevent the injuries suffered by the Plaintiff. Defendant BPD implemented a policy and custom of condonation or deliberate indifference to police misconduct, had a custom or policy of failing to train its officers adequately, and failed to adequately supervise Defendants Jenkins and Gladstone.

9. Defendant BPD's directives and failure to take remedial actions against the pervasive and unreasonable misconducts of these police officers was a proximate cause of Plaintiffs' injuries.

10. Defendant Major Nathan Warfield (hereinafter "Major Warfield" and "Defendant Warfield") is an adult male and, at all times relevant hereto, was employed by Defendant BPD as a Major in Defendant BPD's Internal Affairs Division. Defendant Warfield is sued in his individual and professional capacity under 42 U.S. § 1983, § 1985, and §1988.

5

11. Defendant Warfield, through his official capacity as a Major in Defendant BPD's Internal Affairs Division, implemented a policy or custom of condonation or deliberate indifference to the constitutional violations committed by Defendant BPD officers and had a custom or policy of failing to investigate and discipline Defendant BPD officers adequately.

12. Defendant Warfield, in his personal and official capacity, failed to adequately investigate and discipline Defendants Jenkins and Gladstone, and other police officers of Defendant BPD.

13. Defendant Warfield's supervisory acts and failures to act are attributable as Defendant BPD's direct acts and failures to act. Because Defendant Warfield was a Major in Defendant BPD's Internal Affairs Division on November 4, 2010, his acts or failures to act reflected official policy and practice for Defendant BPD or the failure to correctly implement the same.

14. Defendant Police Commissioner Frederick Bealefeld (hereinafter "Commissioner Bealefeld" and "Defendant Bealefeld") is an adult male and, at all times relevant hereto, was employed by Defendant BPD as Police Commissioner. Defendant Bealefeld is sued in his individual and official capacity under 42 U.S. § 1983, § 1985 and §1988.

15. Defendant Bealefeld, through his official capacity as Police Commissioner of Defendant BPD, implemented a policy or custom of condonation or deliberate indifference to the constitutional violations committed by Defendant BPD officers and had a custom or policy of failing to train Defendant BPD officers adequately.

16. Defendant Bealefeld, in his personal and official capacity, failed to adequately supervise Defendants Jenkins and Gladstone, and other police officers of Defendant BPD.

17. Defendant Bealefeld's supervisory acts and failures to act were the direct acts are attributable as Defendant BPD's direct acts and failures to act. Because Defendant Bealefeld was the Police Commissioner on November 4, 2010, his acts or failures to act reflected official policy and practice for Defendant BPD or the failure to correctly implement the same.

6

18. At all times the actions and practices of the Defendants named herein and those acting at their direction, were performed under the color of state law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution.

## JURISDICTION AND VENUE

19. The above and all other allegations herein are incorporated by reference as if fully set forth.

20. This case presents an actual case and controversy arising under the Fourth and Fourteenth Amendments to the United States Constitution and asserts claims for relief 42 U.S. § 1983, § 1985, and §1988, as well as claims for relief under Article 24 of the Maryland Constitution, and Maryland State Law.

21. Jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and § 1343. This Court also has supplemental jurisdiction over the state law claims against the individual Defendants pursuant to 28 U.S.C. § 1367.

22. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (b) inasmuch as Plaintiff's causes of action arose in the District of Maryland, and at all times relevant to this action all the Defendants were found in this District.

## FACTUAL ALLEGATIONS

23. The above and all other allegations herein are incorporated by reference as if fully set forth.

24. At all times relevant, Defendants Jenkins and Gladstone, were members of Defendant BPD's Baltimore City Police Department, and often worked with the now disgraced Gun Trace Task Force.

25. At all times relevant, Defendant Warfield was employed by Defendant BPD as a Major in the Baltimore City Police Internal Affairs Division.

26. At all times relevant, Defendant Bealefeld was employed by Defendant BPD as Police Commissioner.

27. At all times during the course of these events, Defendant BPD had advance notice that members of the Gun Trace Task Force, Defendants herein, and others, engaged in illegal acts while in the course of their employment. This notice included, but was not limited to, members of the Baltimore City police department planting evidence, stealing money from citizens, and using excessive force.

28. Defendants BPD implemented a policy or custom of condonation or deliberate indifference to the use of planted evidence, illegal search and seizures, and misuse of police powers by Defendant BPD officers.

29. Defendant BPD failed to adequately train and supervise Defendant BPD's officers in proper arrest, search and seizure, and use of police powers.

30. Each of these factual allegations are supported by the incidents detailed below and the complaint set forth herein.

## Gary Brown Incident

31. On June 8, 2009, at the intersection of West Lafayette Street and North Eutaw Street in Baltimore, Maryland, Officers Jamel Rayam and Jason Giordano of Defendant BPD's Gun Trace Task Force were on patrol in plain clothes as part of the Northern District Drug Unit.

32. The two officers saw another officer they believed to be Office Michael Sylvester engaged in a traffic stop in plain clothes. Officers Rayam and Giordano verified Officer Sylvester's identity and assisted in the stop.

33. The driver, Mr. Gary Brown, and his passenger were removed and handcuffed.

34. In the course of the stop, over $11,000 in cash was stolen from the vehicle. The money was traced to the legitimate refinance of a house with a "cash out" of equity.

8

35. On June 11, 2009, Gary Brown made a formal complaint for the theft. Mr. Brown detailed that all three officers discussed the money with him and threatened him with unlawful police actions, i.e. executing fraudulent search warrants on his house.

36. On August 27, 2009, complainant Gary Brown took and passed a polygraph examination regarding his interaction with the officers on June 8, 2009, including the stolen money.

37. On that same day, Officer Sylvester cashed a "negotiable instrument" at M&T Bank in the amount of $10,842.00. The same day he deposited $6,000.00, all in $100 bills, into an account at Destinations Federal Credit Union.

38. On September 8, 2009, a copy of the case file was given to Assistant State's Attorney Doug Ludwig of Baltimore City State's Attorney's Office's Police Integrity Unit. Included were the polygraph results.

39. Despite the fact that the investigation by Defendant BPD was still ongoing and the officers were not yet cleared of any wrongdoing, on June 14, 2010, Baltimore City State's Attorney's Office's Doug Ludwig sent a letter to Internal Affairs stating Baltimore City State's Attorney's Office would not be pursuing charges against the officers involved in the theft.

40. On July 14, 2010, Officers Rayam and Giordano were ordered to take a polygraph test. The test showed a greater than 99% chance that they were being deceptive about the on-duty armed robbery of Mr. Gary Brown. (Exhibit 1).

41. Despite the polygraph failures, Officers Rayam and Giordano were permitted to continue policing the streets of Baltimore.

## Gary Clayton Case

42. On May 4, 2015, Baltimore City State's Attorney's Office filed an indictment in case number 115124016 against Gary Clayton. The case was brought by the Gun Trace Task Force.

43. On November 12, 2015, Mr. Clayton's counsel. Ms. Staci L. Pipkin, filed a Motion for Franks Hearing, challenging the veracity of the affidavit in support of a search warrant that was applied for, and subsequently issued to the Gun Trace Task Force. (Exhibit 2)

44. The attached affidavit in support of the Motion for Franks Hearing alleged that Officer Wayne Jenkins needlessly pulled his gun and put it in Kimberly Demory's face when she asked Officer Jenkins for credentials and subsequently denied her the asthma inhaler when she began having an attack from the stress of the encounter. In addition, Ms. Demory contended that one of the members was wearing an ATF shirt, impersonating a Federal Agent.

45. The Franks Hearing occurred on November 12, 2015, in front of the Honorable Barry G. Williams. The Office of the State's Attorney for Baltimore City was represented by Assistant State's Attorney Kent Grasso. Judge Williams found Officer Jemell Rayam's testimony to be not credible in relation to numerous factual allegations he made. Judge Williams granted Ms. Pipkin's Motion and the warrant was deemed invalid based on numerous factual misrepresentations by Gun Trace Task Force member Officer Jemell Rayam.

46. Baltimore City State's Attorney's Office entered Nolle Prosequi to the indictment on the same day.

47. On January 12, 2016, Baltimore City State's Attorney's Office's Kent Grasso sent a memo to Stacy Ann Lewellyn, Chief of the Police Integrity Unit of Baltimore City State's

Attorney's Office, Cynthia Banks, and MiaBeth Marosy detailing the troubling events of the Franks Hearing. (Exhibit 3)

48. On January 21, 2016, StacyAnn Llewellyn sent a "Memo of Referral" to Defendant Warfield, the Head of Defendant BPD Internal Affairs Division outlining the concerns the Office had with Gun Trace Task Force member Rayam. (Exhibit 4) The memo states that Baltimore City State's Attorney's Office would be making disclosures to defendants and their counsel about Gun Trace Task Force Member Jemell Rayam in cases "where Jemell Rayam is an essential witness."

49. Despite the concerns raised by the Baltimore City State's Attorney's Office, Officer Jenkins was permitted to continue policing the streets of Baltimore.

### Rakeem Douglas Case

50. On November 7, 2016, Baltimore City State's Attorney's Office brought Rakeem Douglas to trial in case number 816281001. The case originated in District Court under Case number 0B02334234. All police involved were members of the Baltimore Police Department, including Jemell Rayam and Wayne Jenkins. Baltimore City State's Attorney's Office dropped Jemell Rayam from their witness list when the case was sent from District Court to Circuit Court for a jury trial.

51. Rakeem Douglas was represented by long term member of the Baltimore City defense bar, Mr. Lawrence Rosenberg. Mr. Rosenberg remembered the 2009 disclosure that previous State's Attorney's Administrations had disclosed. When he asked for it in his matter with Mr. Douglas, he was informed that the State did not deem Jemell Rayam as an "essential witness" so they would not be calling him, thus the disclosure was immaterial.

52. Despite this glaring omission made by the Baltimore City State's Attorney's Office, which would have been made known to the Baltimore Police Department, Defendant BPD took no corrective actions.

### Kendall English Case

53. On July 24, 2015, Kendell English was charged in the District Court under case number 6B02303755 for illegal firearms possession and related counts. He was indicted on August 20, 2015, under case number 115230019.

54. On September 26, 2016, Mr. English, by and through counsel, Karyn Merriweather, filed a Motion to Disclose the Confidential Informant cited by the Gun Trace Task Force in their Application for a Search and Seizure warrant in the case. (Exhibit 5)

55. On October 18, 2016, Baltimore City State's Attorney's Office filed an objection to defense's motion to disclose the CI that Jemell Rayam and the Gun Trace Task Force alleged gave them information used as the basis of the warrant. (Exhibit 6)

56. On December 9, 2016, Judge Lawrence P. Fletcher-Hill denied the defense motion. (Exhibit 7)

57. On September 26, 2016, Defense counsel Karyn Merriweather filed a motion to compel discovery in the form of a request that the Internal Affairs Division file of Gun Trace Task Force Member Jemell Rayam be disclosed. Despite this being eight months after ASA StaciAnn Llewellyn's memo to Defendant Warfield, Baltimore City State's Attorney's Office not only had not been giving the disclosure to defendants, they were actively fighting them in court.

58. At the hearing Defense Counsel proffered to the court that another lawyer had received a disclosure about Jemell Rayam that had bearing on his credibility. Due to the non-

disclosure agreements defense attorneys are required to sign before they view police personnel records, the attorney could not provide specifics.

59. Nevertheless, Ms. Merriweather persisted by offering the entire transcript of Jemell Rayam's testimony in the Franks Hearing from Gary Clayton's case.

60. Baltimore City State's Attorney's Office objected to the disclosure.

61. The Honorable Jeannie Hong of the Circuit Court for Baltimore City ruled in the State's favor. Stating specifically in her order, "There is no indication that Defendant BPD conducted an Internal Affairs of Officer Rayam concerning his testimony in the case." Once again this was eight months after ASA StaciAnn Llewellyn sent her memo to Defendant Warfield of the Internal Affairs Division. (Exhibit 4)

62. Nevertheless, Ms. Merriweather persisted and she filed a Motion for a Franks Hearing challenging the veracity of the Gun Trace Task Force, specifically Jemell Rayam, in the affidavit in support of the search warrant used in the case.

63. Baltimore City State's Attorney's Office objected to the disclosure.

64. One of the allegations in the subsequent indictment of the Gun Trace Task Force in the United States District Court is that they routinely falsified affidavits for search warrants.

### United States Department of Justice Investigation into Baltimore City Police Department

65. On or about August 10, 2016, the United States Department of Justice announced in a 163 page report the outcome of the Department's investigation of Defendant BPD. (Exhibit 8)

66. The Department of Justice concluded that "there is reasonable cause to believe that BPD engages in a pattern or practice of conduct that violates the Constitution or federal law. BPD engages in a pattern or practice of:

    a.  Making unconstitutional stops, searches, and arrest;

   b. Using enforcement strategies that produce severe and unjustified disparities in the
      rates of stops, searches and arrests of African Americans'

   c. Using excessive force; and

   d. Retaliating against people engaging in constitutionally-protected expression."
      (Exhibit 8, pg. 3)

67. In regard to discrimination against African Americans, the report specifically found that
    "racial disparities in BPD's arrests are most pronounced for highly discretionary offenses:
    African Americans accounted for 91 percent of the 1,800 people charged solely with
    "failure to obey" or "trespassing"; 89 percent of the 1,350 charges for making a false
    statement to an officer; and 84 percent of the 6,500 people arrested for "disorderly
    conduct."" (Exhibit 8, pg. 7)

68. In regard to BPD's training of its officers, the report specifically found that "BPD's
    inadequate policies and training contribute to the Department's pattern or practice of
    constitutional violations." (Exhibit 8, pg. 129).

69. Additionally, in regard BPD's supervision of its officers, the report states "Serious
    deficiencies in BPD's supervision of its enforcement activities, including through data
    collection and analysis, contribute to the Department's failure to identify and correct
    unconstitutional policing." (Exhibit 8, pg. 134). Specifically, "[r]elated to BPD's failure to
    supervise its officers and collect data on their activities, the Department lacks an adequate
    early intervention system, or EIS, to identify officers based on patterns in their
    enforcement activities, complaints, and other criteria." (Exhibit 8, pg. 135).

70. Finally, the report made a number of findings regarding BPD's failure to hold officers
    accountable for misconduct, noting "BPD relies on deficient accountability systems that
    fail to curb unconstitutional policing." (Exhibit 8, pg. 139).

### Federal Criminal Proceedings Against the Gun Trace Task Force

71. In March 2017, the United States' Attorney's Office located in Baltimore, Maryland announced its indictment of seven of Defendant BPD's officers.

72. Subsequently, a number of the officers pleaded guilty and others were found guilty at trial in front of this Court.

73. On or about March 2019, Keith Gladstone was charged federally with conspiracy, civil rights violations, destruction and falsifying records, and planting evidence. Some of the allegations against Defendant stem from his criminal conduct with the GTTF. In May of 2019, Defendant pleaded guilty

74. On or about January 5, 2018, Wayne Jenkins, pleaded guilty to racketeering conspiracy, racketeering, robbery, falsification of records, and deprivation of rights under color of law. Defendant was subsequently sentenced to 25 years in prison.

75. Prior to the March 2017 indictments, Plaintiffs, along with the general public, was not aware of the pattern and practice of systemic rights violations being committed by the indicted officers, or their concealment thereof. Plaintiff was also unaware of Defendant BPD's concealment of such actions and Defendant BPD's continued failure to train, supervise, and discipline.

### PLAINTIFFS' CASE

76. On or about November 3, 2010, Defendants Jenkins and Gladstone were conducting alleged crime suppression activity in the area of Edison Hwy. At that time, Defendants observed a 2007 Mercedes Benz (reg. # 72019CD) parked in front of Zink's Bar, on the corner of Lawnview and Edison Hwy. Defendants approached the vehicle, and asked Plaintiff for identification. While attempting to provide his identification, Defendant Jenkins opened the car door and physically pulled Plaintiff out of the car. At no time was

Plaintiff combative, or failed to comply with a lawful order. Plaintiff was handcuffed and made to sit on the curb. Defendants then proceeded to search Plaintiff's car, without his consent, at which time, Defendants found money in a bag behind the driver's seat.

77. Defendants continued to search Plaintiff's vehicle, and Defendant Gladstone showed Plaintiff what appeared to be marijuana, at which time, Gladstone said that they would keep Plaintiff's money. Plaintiff informed Defendants that no drugs were in his car, and that he did not know from where it came. Defendants then began to ask Plaintiff whether he had any money at his residence. Plaintiff was arrested and transported to CBIF for processing. Defendants then went to Plaintiffs' home and gained false entry, with Jovonne Walker present (and without her consent). Defendants illegally searched the residence, planted evidence, and unlawfully arrested Jovonne Walker. Consequently, Plaintiffs were charged with narcotic and weapons related offenses. Defendant Officers performed a warrantless search of Plaintiffs' person, residence and vehicle, without reasonable suspicion nor probable cause, which resulted in false charges. Plaintiffs endured incarceration, suffered humiliation, loss of income, trauma, mental anguish and loss of dignity.

## COUNT I
### (Illegal Arrest in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985 – Officer Gladstone, in his official and personal capacity)

78. The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

79. At all times relevant to this Complaint, Defendant Gladstone was acting under the color of state law as an Officer employed by Defendant BPD and was acting within the scope of this employment.

80. The Plaintiffs, without committing any crime, was unlawfully detained and wrongfully arrested and searched by Defendants. Defendant did not have reasonable suspicion, a legal warrant, or probable cause, to believe that the Plaintiffs were involved in any criminal activity.

81. The act of detaining Plaintiff and searching his vehicle and person without probable cause or a legal warrant amounts to an illegal arrest.

82. Defendant lacked sufficient legal reason to obtain a warrant; and Defendants planted false evidence against Plaintiffs.

83. The acts committed by Defendant were done maliciously, willfully and wantonly, intentionally, and with reasonable certainty that the acts were in violation of Plaintiffs' constitutional rights and would cause harm to Plaintiff.

84. As a result of the Defendant's conduct and actions, Plaintiffs suffered, and will continue to suffer, severe mental anguish and other related expenses.

WHEREFORE, the Plaintiffs demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

### COUNT II
**(Unlawful Search in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985 – Officer Gladstone, in his official and personal capacity)**

85. The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

86. At all times relevant to this Complaint, Defendant was acting under the color of state law as an Officer employed by Defendant BPD and was acting within the scope of his employment.

87. Officer Defendant unlawfully searched Plaintiffs' person without legal justification, and without a search warrant nor probable cause, searched Plaintiffs' vehicle and residence.

88. The act of searching Plaintiffs' person, vehicle and residence without probable cause or a warrant amounts to an unlawful search.

89. There was no factual basis for the allegation that Plaintiffs were in possession of narcotics nor a gun. Nevertheless, Defendant searched Plaintiffs' vehicle, home and person.

90. As a result of the Defendants' conduct and actions, Plaintiffs suffered, and will continue to suffer, severe mental anguish and other related expenses.

WHEREFORE, the Plaintiffs demand judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

**COUNT III**
**(False Imprisonment in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985 – Officer Gladstone, in his official and personal capacity)**

91. The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

92. At all times relevant to this Complaint, Defendant was acting under the color of state law as an Officer employed by Defendant BPD and was acting within the scope of his employment.

93. By detaining Plaintiffs and denying the Plaintiffs' liberty, knowingly without legal justification, Defendant acted with ill will and malice. There was no proper motivation or legal justification to warrant the search and arrest, nor the subsequent false imprisonment.

94. As a result of the actions of Defendant, Plaintiffs suffered damage by being held against their will for an extended period of time without consent or legal justification.

95. At all times the Defendant acted with ill will, malice, and without legal justification and improper motivation, to wit, covering up an illegal search, seizure, and arrest of innocent citizens.

WHEREFORE, the Plaintiffs demand judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

**COUNT IV**
**(Malicious Prosecution in the violation of the 4th and 14th Amendments, Pursuant to 42**
**U.S.C. §1983, 1985 – Officer Gladstone, in his official and personal capacity)**

96. The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

97. At all times relevant to this Complaint, Defendant was acting under the color of state law as an Officer employed by Defendant BPD and was acting within the scope of his employment.

98. Defendant acted intentionally and recklessly in his dealings with Plaintiffs as aforesaid.

99. Defendant, by detaining, searching and arresting Plaintiffs, instituted a criminal proceeding against Plaintiffs.

100. Criminal proceedings against Plaintiffs for alleged narcotics and weapons offenses persist today.

101. By swearing false reports and affidavits in support of the arrest, which relied on fabricated evidence, Defendant acted with malice and without probable cause.

102. Defendant Gladstone instituted the prosecution with malice or a purpose other than bringing the Plaintiff to justice.

103. As a direct result Plaintiffs have suffered, and continues to suffer, severe emotional distress.

WHEREFORE, the Plaintiffs demand judgment against Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000) and TEN MILLION DOLLARS ($10,000,000) punitive damages, with interest and costs.

### COUNT V
### (Violation of Maryland Declaration of Rights – Officer Gladstone)

104. The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

105. At all times relevant to this Complaint, Defendant was acting under the color of state law as an Officer employed by Defendant BPD.

106. Plaintiffs submit these claims against the Defendant under Article 24 of the Maryland Declaration of Rights.

107. Plaintiff incorporate all allegations, including those in the aforementioned claims of illegal arrest, unlawful search, and false imprisonment, under this claim, and reiterated that Plaintiff have contended violations of Article 24 throughout this Complaint.

108. Plaintiffs further states that the allegations alleged were within the scope of Defendant's employment and were conducted with actual malice as to overcome any limited immunity afforded the Defendant under Article 24.

109. Plaintiffs further state that there is otherwise no immunity to be claimed by any Defendant as to relief sought under Article 24 of the Maryland Declaration of Rights.

110. This Court may exercise jurisdiction over this claim.

WHEREFORE, the Plaintiffs demand judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs.

## COUNT VI
(Illegal Arrest in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. §
1983, 1985 – Officer Jenkins, in his official and personal capacity)

111.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

112.     At all times relevant to this Complaint, Defendant was acting under the color of state law as an Officer employed by Defendant BPD and was acting within the scope of his employment.

113.     The Plaintiffs, without committing any criminal act, were unlawfully detained, and wrongfully arrested and searched by Defendant. Defendant did not have reasonable suspicion, a legal warrant nor probable cause to believe that the Plaintiffs were involved in any criminal activity.

114.     The act of detaining Plaintiffs and searching their vehicle, home and person, without probable cause or a legal warrant amounts to illegal arrest.

115.     The acts committed by Defendant were done maliciously, willfully and wantonly, intentionally, and with reasonable certainty that the acts were in violation of Plaintiffs' constitutional rights and would cause harm to Plaintiffs.

116.     As a result of the Defendant's conduct and actions, Plaintiffs suffered, and will continue to suffer, severe mental anguish and other related expenses.

WHEREFORE, the Plaintiffs demand judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT VII
### (Unlawful Search in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985 – Officer Jenkins, in his official and personal capacity)

117.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

118.     At all times relevant to this Complaint, Defendant was acting under the color of state law as an Officer employed by Defendant BPD and was acting within the scope of his employment.

119.     Officer Defendant searched Plaintiffs' person without legal justification, and without a search warrant nor probable cause, searched Plaintiffs' vehicle and home.

120.     The act of searching Plaintiffs' person and vehicle without probable cause or a warrant amounts to an unlawful search.

121.     There was no factual basis for the allegation that Plaintiffs were in possession of narcotics or a gun. Nevertheless, Defendant searched Plaintiffs' vehicle, home and person.

122.     As a result of the Defendant's conduct and actions, Plaintiffs suffered, and will continue to suffer, severe mental anguish and other related expenses.

WHEREFORE, the Plaintiffs demand judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT VIII
### (False Imprisonment in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985 – Officer Jenkins, in his official and personal capacity)

123.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

124.     At all times relevant to this Complaint, Defendant was acting under the color of

22

state law as an Officer employed by Defendant BPD and was acting within the scope of his employment.

125.     By detaining Plaintiffs and denying the Plaintiffs' liberty, knowingly without legal justification, Defendant acted with ill will and malice. There was no proper motivation or legal justification to warrant the search and arrest, nor the subsequent false imprisonment.

126.     As a result of the actions of Defendant, Plaintiffs suffered damage by being held against their will for an extended period of time without consent or legal justification.

127.     At all times the Defendant acted with ill will and malice, and without legal justification and improper motivation, to wit, covering up an illegal search, seizure, and arrest of innocent citizens.

WHEREFORE, the Plaintiffs demand judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

<u>COUNT VIV</u>
**(Violation of Maryland Declaration of Rights – Officer Jenkins)**

128.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

129.     At all times relevant to this Complaint, Defendant was acting under the color of state law as an Officer employed by Defendant BPD.

130.     Plaintiffs submit these claims against the Defendant under Article 24 of the Maryland Declaration of Rights.

131.     Plaintiffs incorporate all allegations, including those in the aforementioned claims of illegal arrest, unlawful search, and false imprisonment, under this claim, and reiterated that Plaintiffs have contended violations of Article 24 throughout this Complaint.

132.     Plaintiffs further state that the allegations alleged were within the scope of Defendant's employment and were conducted with actual malice as to overcome any limited immunity afforded the Defendant under Article 24.

133.     Plaintiff further state that there is otherwise no immunity to be claimed by any Defendant as to relief sought under Article 24 of the Maryland Declaration of Rights.

134.     This Court may exercise jurisdiction over this claim.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs.

### COUNT X
**(Malicious Prosecution in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. §1983, 1985 – Officer Jenkins, in his official and personal capacity)**

135.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

136.     At all times relevant to this Complaint, Defendant was acting under the color of state law as an Officer employed by Defendant BPD and was acting within the scope of his employment.

137.     Defendant acted intentionally and recklessly in his dealings with Plaintiffs as aforesaid.

138.     Defendant; by arresting and charging Plaintiffs, instituted a criminal proceeding against the Plaintiffs.

139.     Criminal proceedings against Plaintiffs for the alleged narcotics and weapons offenses still persist today.

140.     By swearing or preparing false reports or affidavits in support of the arrest, which relied on fabricated evidence, Defendant acted with malice and without probable cause.

141.     Defendant instituted the prosecution with malice or a purpose other than bringing the Plaintiff to justice.

142.     As a direct result Plaintiffs have suffered, and continues to suffer, severe emotional distress.

WHEREFORE, the Plaintiffs demand judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs.

### COUNT XI
**(Civil Conspiracy Pursuant to 42 U.S.C. §1983, 1985– Defendants Jenkins and Gladstone)**

143.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

144.     At all times pertinent to the complaint, Defendants Jenkins and Gladstone, acting within the scope of their employment and under color of law, agreed amongst themselves and with other individuals of Defendant BPD to act in concert to deprive Plaintiffs of their constitutional rights and equal protection of the laws.

145.     In furtherance of their conspiracy, Defendants engaged in and facilitated numerous unlawful acts, including, but not limited to, fabricating evidence and committing perjury in a statement of probable cause, and were otherwise willful participants in the joint activity.

146.     As a result of this civil conspiracy, Plaintiffs were subjected to unlawful search, arrest, detention and injuries, including, but not limited to, loss of liberty and pain and suffering.

WHEREFORE, the Plaintiffs demand judgment against the Defendants for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and

TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

**COUNT XII**
**(Civil Conspiracy Pursuant to 42 U.S.C. §1983, 1985– Defendant BPD)**

147.    The above and all other paragraphs herein are incorporated by reference as if fully set forth.

148.    At all times pertinent to the complaint, Defendant BPD entered in to a civil conspiracy with the named Officer Defendants to facilitate and enable members of the Defendant BPD's force to hide the unit's use of illegal arrest, robbery, drug dealing and violence on the streets of Baltimore City.

149.    These actions include, but are not limited to, making material misrepresentations of fact or omissions surrounding their illegal detention of Plaintiffs, including but not limited to the fabrication of evidence.

150.    Additionally, failing to conduct meaningful Internal Affairs investigation despite being confronted with allegations that Officer Defendants were engaging in a pattern of illegal searches, seizures, and arrests, continuing to employ the Officer Defendants after findings of illegal activity were made, and failing to reprimand the officers for conducting such illegal activity while performing their duties as officers of the BPD.

151.    As a result of this civil conspiracy, Plaintiffs were subjected to unlawful arrest, detention and injuries, at least a year before the first members of the conspiracy were publicly indicted.

WHEREFORE, the Plaintiffs demand judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XIII
### (Aider & Abettor Pursuant to 42 U.S.C. §1983, 1985– Defendant BPD)

152.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

153.     At all times, Defendant BPD provided substantial assistance, aid, and encouragement to the Defendants and their criminal activities.

154.     Defendant BPD had actual knowledge of the wrongful conduct of the its members and their role in furthering such conduct through failing to investigate and reprimand any of the officers involved despite actual knowledge of illegal activity.

WHEREFORE, the Plaintiffs demand judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XIV
### (Unconstitutional Custom or Practice of Illegal Search, Unlawful Arrest, and Improper use of Police Powers Pursuant to 42 U.S.C. §1983, 1985– Defendant BPD)

155.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

156.     Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant BPD is prohibited from allowing its officers to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise its law enforcement officers in the proper arrest procedures and use of police powers.

157.     As alleged herein, Defendants Jenkins and Gladstone, and other officers of the Baltimore City Police Department, and thereby, Defendant BPD has engaged in a pattern, practice, policy, or custom of allowing, enabling, and facilitating Defendant BPD officers

to conduct unlawful arrests, unlawful searches, unlawful seizures and has permitted officers to conduct further improper use of police powers.

158.     After indictments were unsealed in the United States District Court for the District of Maryland, Plaintiffs became aware that Officer Defendants had a long documented disciplinary record of violating the civil rights of Baltimore City residents including, but not limited to, an overwhelming number of Internal Affairs complaints, in addition to a number of settled lawsuits alleging this conduct by the named Officer Defendants. The policy and practice of returning these Officers to their normal employment with the BPD without adequate training and supervision made the violation of Plaintiffs' and other citizens' rights not a mere possibility, but a certainty.

159.     Upon information and belief, Defendant BPD's officers have been allowed, enabled, and facilitated in engaging in unlawful practices absent proper supervision or consequence, including unlawful arrests, illegal search and seizures, and improper use of police powers.

160.     As alleged herein, Defendant BPD entered in to a civil conspiracy with members of its department to hide the force's use of illegal arrest, robbery, drug dealing and violence on the streets of Baltimore City.

161.     As alleged herein, the actions by all named Defendants was unreasonable, absent any lawful justification and/or excuse, and was in keeping with the pattern practice, police and/or custom of the Defendant BPD.

162.     Upon information and belief, Defendant BPD has failed to discipline any of the named Officers, or anyone else for the conduct alleged herein, and as such has further ratified their improper, willful, wanton, and unlawful actions with respect to their improper uses of police powers.

163.    Defendant BPD's failure to take remedial actions against the pervasive and unreasonable misconducts of these police officers was a proximate cause of Plaintiffs' injuries.

WHEREFORE, the Plaintiffs demand judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

<u>**COUNT XV**</u>
**(Inadequate Training Pursuant to 42 U.S.C. §1983, 1985– Defendant BPD)**

164.    The above and all other paragraphs herein are incorporated by reference as if fully set forth.

165.    Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant BPD is prohibited from allowing, enabling, and facilitating its officers to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise to its law enforcement officers in the proper arrest procedures and use of police powers.

166.    As alleged herein, Defendants Jenkins and Gladstone, and other officers of the Gun Trace Task Force, and thereby, Defendant BPD has engaged in a pattern, practice, policy, or custom of allowing BPD officers to misuse police powers in connection with apprehending and/or arresting individuals and in so doing have failed to properly train Defendant BPD officers.

167.    After indictments were unsealed in the United States District Court for the District of Maryland, Plaintiff became aware that Officer Defendants had a long documented disciplinary record of violating the civil rights of Baltimore City residents including, but not limited to, an overwhelming number of Internal Affairs complaints, in addition to a

number of settled lawsuits alleging this conduct by the named Officer Defendants. The policy and practice of returning these Officers to their normal employment with the BPD without adequate training and supervision made the violation of Plaintiff' and other citizens' rights not a mere possibility, but a certainty.

168.     At all relevant times Defendant BPD, directly and through its employees, agents, and deputies, had an obligation to ensure that its employees, agents, and deputies exercised the same degree of care that a reasonable and prudent person would exercise in the same or similar situation with respect to the training of all employees, agents, and deputies under its direction and control.

169.     Upon information and belief, Defendant BPD's officers have been allowed to engage in unlawful practices absent proper training, including unlawful arrest, illegal search and seizure, and improper use of police powers.

170.     It was readily foreseeable and highly predictable that failing to properly train Defendant BPD's officers in the proper application of force would, and in fact did, result in the violation of Plaintiff's constitutional rights as alleged herein, and Defendant BPD was indifferent to same.

171.     As alleged herein, the actions by all named Defendants was unreasonable, absent any lawful justification and/or excuse, and it was a direct result of Defendant BPD's failure to adequately train its officers in dealing in proper arrest, search and seizure and use of police powers.

172.     As a direct and proximate result of Defendant BPD's failure adequately train its officers and employees, Plaintiffs were injured as detailed herein and has suffered, and continues to suffer.

WHEREFORE, the Plaintiffs demand judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XVI
### (Failure to Supervise Pursuant to 42 U.S.C. §1983, 1985– Defendant BPD)

173.    The above and all other paragraphs herein are incorporated by reference as if fully set forth.

174.    Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant BPD is prohibited from allowing its officers to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise to its law enforcement officers in the proper arrest procedures and use of police powers.

175.    After indictments were unsealed in the United States District Court for the District of Maryland, Plaintiff became aware that Officer Defendants had a long documented disciplinary record of violating the civil rights of Baltimore City residents including, but not limited to, an overwhelming number of Internal Affairs complaints, in addition to a number of settled lawsuits alleging this conduct by the named Officer Defendants. The policy and practice of returning these Officers to their normal employment with the BPD without adequate training and supervision made the violation of Plaintiff's and other citizens' rights not a mere possibility, but a certainty.

176.    At all relevant times, Defendant BPD, directly and through its employees, agents, and deputies, had an obligation to ensure that its employees, agents, and deputies exercised the same degree of care that a reasonable and prudent person would exercise in the same or similar situation with respect to the supervision of all employees, agents, and deputies under its direction and control.

177.    Upon information and belief, the supervision provided and/or required by Defendant BPD regarding proper arrest procedures and use of police powers was inadequate, insufficient, or nonexistent, and Defendant BPD, directly and through its employees, agents and deputies, failed to exercise the above requisite degree of care in the supervision of all employees, agents, and deputies under his direction and control.

178.    As alleged herein, Defendants Jenkins and Gladstone, and other officers of its force, and thereby, Defendant BPD have engaged in a pattern, practice, policy, or custom of allowing BPD officers to misuse police powers in connection with apprehending and/or arresting individuals and in so doing have failed to properly supervise Defendant BPD officers in the proper arrest procedures and use of police powers.

179.    It was readily foreseeable and highly predictable that failing to properly supervise Defendant BPD's officers in the proper arrest procedures and use of police powers would, and in fact did, result in the violation of Plaintiff's constitutional rights as alleged herein and Defendant BPD was indifferent to same.

180.    As alleged herein, the actions by all named Defendants was unreasonable, absent any lawful justification and/or excuse, and it was a direct result of Defendant BPD's failure to adequately supervise its officers.

181.    As a direct and proximate result of Defendant BPD's failure to adequately supervise its officers and employees, Plaintiffs were injured as detailed herein and has suffered, and continues to suffer damages.

182.    Defendant BPD's failure to properly supervise its officers and employees was tantamount to deliberate indifference.

183.    Defendant BPD's failure to adequately supervise further confirms the aforementioned pattern and practice.

184.    As alleged herein, Defendant BPD has engaged in a pattern, practice, policy, or custom of allowing Defendant BPD's officers to fabricate evidence, conduct illegal arrests, searches, and seizures, and improperly use police powers.

185.    Defendant BPD's was aware, and should have foreseen, that Defendant BPD's officers would confront situations as that presented by Plaintiff.

186.    Upon information and belief, situations involving illegal conduct similar to that which resulted in the deprivation of Plaintiffs' constitutional rights and the injuries detailed herein, have previously been experienced by Defendant BPD and have been similarly mishandled by Defendant BPD as alleged herein.

187.    As alleged herein, Defendant BPD entered in to a civil conspiracy with the members of its force to hide the unit's use of illegal arrest, robbery, drug dealing and violence on the streets of Baltimore City.

188.    Defendant BPD's improper handling of incidents of planted evidence, illegal arrest and improper use of police powers committed by Defendant BPD's officers such as those detailed herein will frequently, and did in the instant case, result in the deprivation of individual constitutional rights as alleged herein.

189.    As a direct and proximate result of Defendant BPD's deliberate indifference to the supervision of its officers and employees as herein detailed, Plaintiffs have been injured, and continues to suffer injury.

WHEREFORE, the Plaintiffs demand judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XVII
### (Unconstitutional Custom or Practice of Illegal Search, Unlawful Arrest, and Improper use of Police Powers Pursuant to 42 U.S.C. §1983, 1985– Defendant Warfield, in his personal and official capacity)

190.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

191.    Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant Warfield is prohibited from allowing his officers to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise his law enforcement officers in the proper arrest procedures and use of police powers.

192.    As alleged herein, Defendant Warfield has engaged in a pattern, practice, policy, or custom of allowing the named Officer Defendants to conduct unlawful arrests, unlawful searches, unlawful seizures and has permitted officers to conduct further improper use of police powers.

193.    As alleged herein, Defendant Warfield was employed by Defendant BPD as a Major of the Internal Affairs Division.

194.    Upon information and belief, Defendant Warfield, through his lack of investigation into the officers despite numerous complaints of their illegal activity, permitted the named Officer Defendants to engage in unlawful practices absent proper supervision or consequence, including unlawful arrests, illegal search and seizures, and improper use of police powers.

195.    As alleged herein, the actions by all named Defendants was unreasonable, absent any lawful justification and/or excuse, and was in keeping with the pattern practice, police and/or custom of Defendant Warfield.

196.     Upon information and belief, Defendant Warfield has failed to discipline any of the named Officers, or anyone else for the conduct alleged herein, and as such has further ratified their improper, willful, wanton, and unlawful actions with respect to their improper uses of police powers.

197.     Upon information and belief, Defendant Warfield failed to discipline any of the officers, while acting in his official capacity as a Major of the Internal Affairs Division despite a long record of complaints made against Officer Defendants.

198.     Defendant Warfield's failure to take remedial actions against the pervasive and unreasonable misconducts of these police officers was a proximate cause of Plaintiffs' injuries.

WHEREFORE, the Plaintiffs demand judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XVIII
### (Failure to Supervise Pursuant to 42 U.S.C. §1983, 1985– Defendant Warfield, in his personal and official capacity)

199.     The above and all other paragraphs herein are incorporated by reference as if fully set forth.

200.     Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant Warfield is prohibited from allowing the named Officer Defendants to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise to its law enforcement officers in the proper arrest procedures and use of police powers.

201.    At all relevant times, Defendant Warfield had an obligation to ensure that the named Officer Defendants exercised the same degree of care that a reasonable and prudent person would exercise in the same or similar situation with respect to the supervision of all employees, agents, and deputies under his direction and control.

202.    Upon information and belief, the supervision provided and/or required by Defendant Warfield regarding proper arrest procedures and use of police powers was inadequate, insufficient, or nonexistent, and Defendant Warfield failed to exercise the above requisite degree of care in the supervision of all employees, agents, and deputies under his direction and control.

203.    Prior to the events involving Plaintiffs, Defendant Warfield, as Major of Internal Affairs, knew or should have known of the nature of Officer Defendants' systemic civil rights violations based on the number of Internal Affairs complaints alleged against the Officer Defendants.

204.    As alleged herein, Defendants Jenkins and Gladstone, and other officers of Baltimore Police Department, and thereby, Defendant Warfield has engaged in a pattern, practice, policy, or custom of allowing the named Officer Defendants to misuse police powers in connection with apprehending and/or arresting individuals and in so doing have failed to properly supervise the named Officer Defendants in the proper arrest procedures and use of police powers.

205.    It was readily foreseeable and highly predictable that failing to properly supervise the named Officer Defendants in the proper arrest procedures and use of police powers, including failing to investigate and take remedial actions for improper police actions, would, and in fact did, result in the violation of Plaintiffs' constitutional rights as alleged herein and Defendant Warfield was indifferent to same.

206.     As alleged herein, the actions by all named Defendants were unreasonable, absent any lawful justification and/or excuse, and it was a direct result of Defendant Warfield's failure to adequately supervise his officers.

207.     As a direct and proximate result of Defendant Warfield's failure to adequately supervise his officers and employees, Plaintiffs were injured as detailed herein and has suffered, and continues to suffer damages.

208.     Defendant Warfield's failure to properly supervise Defendant BPD's officers was tantamount to deliberate indifference.

209.     Defendant Warfield's failure to adequately supervise further confirms the aforementioned pattern and practice.

210.     As alleged herein, Defendant Warfield has engaged in a pattern, practice, policy, or custom of allowing Defendant BPD's officers to plant evidence, conduct illegal arrests, searches, and seizures, and improperly use police powers.

211.     Defendant Warfield was aware, and should have foreseen, that the named Officer Defendants would confront situations as that presented by Plaintiffs.

212.     Upon information and belief, situations involving illegal conduct similar to that which resulted in the deprivation of Plaintiffs' constitutional rights and the injuries detailed herein, have previously been experienced by Defendant Warfield and have been similarly mishandled by Defendant Warfield as alleged herein.

213.     Defendant Warfield's improper handling of allegations of planted evidence, illegal arrest and improper use of police powers committed by the named Officer Defendants such as those detailed herein will frequently, and did in the instant case, result in the deprivation of individual constitutional rights as alleged herein.

214.     As a direct and proximate result of Defendant Warfield's deliberate indifference to the supervision of Defendant BPD's officers as herein detailed, Plaintiffs have been injured, and continues to suffer injury.

WHEREFORE, the Plaintiffs demand judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XVIV
**(Unconstitutional Custom or Practice of Illegal Search, Unlawful Arrest, and Improper use of Police Powers Pursuant to 42 U.S.C. §1983, 1985– Defendant Bealefeld, in his personal and official capacity)**

215.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

216.     Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant Bealeféld is prohibited from allowing his officers to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise his law enforcement officers in the proper arrest procedures and use of police powers.

217.     As alleged herein, Defendant Bealefeld has engaged in a pattern, practice, policy, or custom of allowing the named Officer Defendants to conduct unlawful arrests, unlawful searches, unlawful seizures and has permitted officers to conduct further improper use of police powers.

218.     As alleged herein, Defendant Bealefeld was employed by Defendant BPD as a Deputy Police Commissioner.

219.     Upon information and belief, Defendant Bealefeld, through his lack of investigation into the officers despite numerous complaints of their illegal activity,

permitted the named Officer Defendants to engage in unlawful practices absent proper supervision or consequence, including unlawful arrests, illegal search and seizures, and improper use of police powers.

220.    As alleged herein, the actions by all named Defendants was unreasonable, absent any lawful justification and/or excuse, and was in keeping with the pattern practice, police and/or custom of Defendant Bealefeld.

221.    Upon information and belief, Defendant Bealefeld has failed to discipline any of the named Officers, or anyone else for the conduct alleged herein, and as such has further ratified their improper, willful, wanton, and unlawful actions with respect to their improper uses of police powers.

222.    Upon information and belief, Defendant Bealefeld failed to discipline any of the officers, while acting in his official capacity as a Deputy Police Commissioner.

223.    Defendant Bealefeld's failure to take remedial actions against the pervasive and unreasonable misconducts of these police officers was a proximate cause of Plaintiffs' injuries.

WHEREFORE, the Plaintiffs demand judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

**COUNT XX**
**(Inadequate Training Pursuant to 42 U.S.C. §1983, 1985– Defendant Bealefeld, in his personal and official capacity)**

224.    The above and all other paragraphs herein are incorporated by reference as if fully set forth.

225.     Under the Fourth and Fourteenth Amendments to the United States Constitution,
Defendant Bealefeld is prohibited from allowing his officers to engage in a pattern,
practice, policy or custom of violating citizens' constitutional rights and is obligated to
train and supervise to its law enforcement officers in the proper arrest procedures and use
of police powers.

226.     As alleged herein, Defendant Bealefeld has engaged in a pattern, practice, policy,
or custom of allowing named Officer Defendants to misuse police powers in connection
with apprehending and/or arresting individuals and in so doing have failed to properly
train Defendant BPD officers.

227.     At all relevant times Defendant Bealefeld, had an obligation exercise the same
degree of care that a reasonable and prudent person would exercise in the same or similar
situation with respect to the training of all employees, agents, and deputies under its
direction and control.

228.     Upon information and belief, Defendant Bealefeld permitted the named Officer
Defendants to engage in unlawful practices absent proper training, including unlawful
arrest, illegal search and seizure, and improper use of police powers.

229.     It was readily foreseeable and highly predictable that failing to properly train the
named Officer Defendants in the proper use of police powers would, and in fact did,
result in the violation of Plaintiff' constitutional rights as alleged herein, and Defendant
Bealefeld was indifferent to same.

230.     As alleged herein, the actions by all named Defendants was unreasonable, absent
any lawful justification and/or excuse, and it was a direct result of Defendant Bealefeld's
failure to adequately train his officers in dealing in proper arrest procedures, search and
seizure and use of police powers.

231.     As a direct and proximate result of Defendant Bealefeld's failure adequately train his officers, Plaintiffs were injured as detailed herein and has suffered, and continues to suffer.

WHEREFORE, the Plaintiffs demand judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

**COUNT XXI**
**(Failure to Supervise Pursuant to 42 U.S.C. §1983, 1985– Defendant Bealefeld, in his personal and official capacity)**

232.     The above and all other paragraphs herein are incorporated by reference as if fully set forth.

233.     Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant Bealefeld is prohibited from allowing the named Officer Defendants to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise to its law enforcement officers in the proper arrest procedures and use of police powers.

234.     At all relevant times, Defendant Bealefeld had an obligation to ensure that the named Officer Defendants exercised the same degree of care that a reasonable and prudent person would exercise in the same or similar situation with respect to the supervision of all employees, agents, and deputies under his direction and control.

235.     Upon information and belief, the supervision provided and/or required by Defendant Bealefeld regarding proper arrest procedures and use of police powers was inadequate, insufficient, or nonexistent, and Defendant Bealefeld failed to exercise the

above requisite degree of care in the supervision of all employees, agents, and deputies under his direction and control.

236. As alleged herein, Defendants Jenkins and Gladstone, and other officers of the Baltimore Police Department, and thereby, Defendant Bealefeld has engaged in a pattern, practice, policy, or custom of allowing the named Officer Defendants to misuse police powers in connection with apprehending and/or arresting individuals and in so doing have failed to properly supervise the named Officer Defendants in the proper arrest procedures and use of police powers.

237. It was readily foreseeable and highly predictable that failing to properly supervise the named Officer Defendants in the proper arrest procedures and use of police powers, including failing to investigate and take remedial actions for improper police actions, would, and in fact did, result in the violation of Plaintiffs' constitutional rights as alleged herein and Defendant Bealefeld was indifferent to same.

238. As alleged herein, the actions by all named Defendants were unreasonable, absent any lawful justification and/or excuse, and it was a direct result of Defendant Bealefeld's failure to adequately supervise his officers.

239. As a direct and proximate result of Defendant Bealefeld's failure to adequately supervise his officers and employees, Plaintiffs were injured as detailed herein and has suffered, and continues to suffer damages.

240. Defendant Bealefeld's failure to properly supervise Defendant BPD's officers was tantamount to deliberate indifference.

241. Defendant Bealefeld's failure to adequately supervise further confirms the aforementioned pattern and practice.

242.    As alleged herein, Defendant Bealefeld has engaged in a pattern, practice, policy, or custom of allowing Defendant BPD's officers to plant evidence, conduct illegal arrests, searches, and seizures, and improperly use police powers.

243.    Defendant Bealefeld was aware, and should have foreseen, that the named Officer Defendants would confront situations as that presented by Plaintiffs.

244.    Upon information and belief, situations involving illegal conduct similar to that which resulted in the deprivation of Plaintiffs' constitutional rights and the injuries detailed herein, have previously been experienced by Defendant Bealefeld and have been similarly mishandled by Defendant Bealefeld as alleged herein.

245.    Defendant Bealefeld's improper handling of allegations of planted evidence, illegal arrest and improper use of police powers committed by the named Officer Defendants such as those detailed herein will frequently, and did in the instant case, result in the deprivation of individual constitutional rights as alleged herein.

246.    As a direct and proximate result of Defendant Bealefeld's deliberate indifference to the supervision of Defendant BPD's officers as herein detailed, Plaintiffs have been injured, and continues to suffer injury.

WHEREFORE, the Plaintiffs demand judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## JURY TRIAL DEMAND

Plaintiff demands trial by jury on all issues of fact in this case.

Respectfully Submitted,

Ivan J. Bates, Esq.
Bates & Garcia, LLC
9512120040
201 N. Charles Street
Suite 1900
Baltimore, MD 21201
Phone: (410) 814-4600
ivan@batesgarcia.com